T.C. Memo. 2007-69

UNITED STATES TAX COURT

DAVID AND MONIKA ZISSKIND, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 14621-05L.          Filed March 27, 2007.

Timothy J. Burke, for petitioners.

Louise R. Forbes, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

HAINES, Judge:  Petitioners filed a petition with this Court in response to a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330 (notice of determination) for 1999.[1]  Pursuant to section 6330(d),

_____

[1]  Unless otherwise indicated, all section references are to
(continued...)

petitioners seek review of respondent's determination.  The issues for decision are:  (1) Whether petitioners are liable for an addition to tax under section 6651(a)(2); (2) whether respondent abused his discretion by determining that petitioners were not entitled to an abatement of interest under section 6404(e); and (3) whether respondent abused his discretion by determining that a Federal tax lien was appropriately filed and would remain in effect until petitioners' tax liability was satisfied.

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts, the supplemental stipulation of facts, and the attached exhibits are incorporated herein by this reference.  At the time the petition was filed, petitioners resided in South Boston, Massachusetts.

During 1999, David Zisskind (petitioner) was a self-employed real estate developer and contractor.  Petitioner owned an interest in Mercer Properties, L.L.C. (Mercer).  In April 1999, Mercer sold real property developed by petitioner.  In April or May 1999, Mercer distributed profits of $156,857 from that sale to petitioner.  Petitioner knew that he would owe tax as a result

---

[1](...continued)
the Internal Revenue Code, as amended, and all Rule references are to the Tax Court Rules of Practice and Procedure.  Amounts are rounded to the nearest dollar.

of the distribution. However, petitioner did not make any estimated tax payments during 1999.

Despite their 1999 Federal income tax return's being due on August 15, 2000, petitioners filed their return on December 4, 2000. Petitioners reported the distribution of income from Mercer, total income of $154,751, taxable income of $121,530, and total tax of $42,159. Petitioners reported zero total payments, an estimated tax penalty of $805, and a total amount due of $42,964. Petitioners paid only $500 with their return.

On January 1, 2001, respondent assessed the total amount petitioners reported due, an addition to tax of $7,589 under section 6651(a)(1) for failure to timely file, and an addition to tax of $1,895 under section 6651(a)(2) for failure to pay the amount shown as tax on the return.

On November 27, 2002, petitioners submitted to respondent a Form 656, Offer in Compromise, and a Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals. Petitioners proposed to pay $14,000 to compromise their outstanding tax liability for 1999. Respondent found that petitioners' Form 433-A was insufficient, questioned the source of several deposits into petitioners' bank account, and questioned their involvement in at least two limited liability companies. On July 7, 2003, respondent requested more information from petitioners. Respondent found the additional

information provided by petitioners unsatisfactory and returned the offer-in-compromise forms to petitioners on April 27, 2004.

On April 29, 2004, respondent sent petitioners a Notice of Federal Tax Lien and Your Right to a Hearing Under IRC 6320 (notice of Federal tax lien) for their outstanding tax liability for 1999. At the time respondent issued the notice of Federal tax lien, petitioners owed $29,414, including penalties and interest.

On May 18, 2004, petitioners submitted to respondent a Form 12153, Request for a Collection Due Process Hearing (request for a section 6330 hearing). Petitioners requested that an offer-in-compromise or an installment agreement be entered into. However, petitioners did not provide a Form 656, a Form 433-A, or an installment agreement request.[2]

On June 17, 2004, Settlement Officer Maria Russo (Ms. Russo) of respondent's Boston Appeals Office was assigned to petitioners' case. On September 28, 2004, Timothy J. Burke (Mr. Burke), petitioners' attorney, telephoned Ms. Russo to discuss petitioners' request for a section 6330 hearing. On October 21,

---

[2] At various times during their sec. 6330 hearing and afterwards, petitioners requested an offer-in-compromise or an installment agreement. In the notice of determination, respondent determined that petitioners abandoned their request for an offer-in-compromise and did not provide adequate financial information so that an installment agreement could be considered. Petitioners do not dispute this determination in their petition or on brief, and we do not discuss the offer-in-compromise and the installment agreement further.

2004, Mr. Burke sent a letter to Ms. Russo disputing petitioners' liability for the additions to tax under section 6651(a)(1) and (2).

Petitioners' section 6330 hearing was held on December 16, 2004. During the hearing, petitioners contested their liability for the additions to tax under section 6651(a)(1) and (2), requested an abatement of interest under section 6404(e), and requested the withdrawal of the Federal tax lien. Ms. Russo informed petitioners they would not be liable for the additions to tax under section 6651(a)(1) and (2) if they could establish that their failure to timely file and pay was due to reasonable cause. Ms. Russo requested that petitioners provide her with additional information to establish reasonable cause.

Between January 31 and April 22, 2005, petitioners provided Ms. Russo with bank statements, their 2000 Federal income tax return, and other information intended to establish reasonable cause for their failure to timely file and pay. On April 27, 2005, Ms. Russo advised petitioners that she would review the information submitted and make her determination.

On July 1, 2005, respondent issued petitioners the notice of determination. Respondent determined that petitioners established their failure to timely file was due to reasonable cause. Accordingly, respondent determined petitioners were not liable for an addition to tax under section 6651(a)(1). However,

respondent determined petitioners were liable for an addition to tax under section 6651(a)(2) because they did not establish that their failure to pay the tax shown on their return was due to reasonable cause.[3] Respondent also determined petitioners were not entitled to an abatement of interest. Because petitioners "provided no concrete information as to how the collection would be facilitated" if the notice of Federal tax lien were withdrawn, respondent determined the Federal tax lien should not be withdrawn. Respondent verified that all statutory and administrative requirements were met and concluded that the filing of the notice of Federal tax lien was appropriate.

In response to the notice of determination, petitioners filed a petition with this Court on August 8, 2005.

OPINION

Section 6321 imposes a lien in favor of the United States on all property and rights to property of a taxpayer liable for taxes when a demand for payment of the taxes has been made and the taxpayer fails to pay those taxes. Section 6320(a) provides that the Secretary shall furnish the taxpayer with written notice of a Federal tax lien within 5 business days after the notice of lien is filed. Section 6320 further provides that the taxpayer

_____

[3] Because respondent found petitioners were not liable for the addition to tax under sec. 6651(a)(1), respondent increased the amount of the addition to tax under sec. 6651(a)(2) by $4,725 to $6,620.

may request an Appeals hearing within 30 days beginning on the day after the 5-day period described above.  Sec. 6320(a)(3)(B) and (b)(1).  Section 6320(c) provides that the Appeals hearing generally shall be conducted consistent with the procedures set forth in section 6330.

Section 6330(c) provides for review with respect to collection issues such as the appropriateness of the Commissioner's proposed collection actions and the possibility of collection alternatives.  Sec. 6330(c)(2)(A).  The taxpayer may also challenge the amount of the underlying tax liability if a statutory notice of deficiency was not received or the taxpayer did not otherwise have an opportunity to dispute the tax liability.  Sec. 6330(c)(2)(B).

Pursuant to section 6330(d)(1), within 30 days of the issuance of a notice of determination the taxpayer may appeal the determination to this Court if we have jurisdiction over the underlying tax liability.  Where the validity of the underlying tax liability is properly at issue, the Court will review the matter de novo.  Sego v. Commissioner, 114 T.C. 604, 610 (2000); Goza v. Commissioner, 114 T.C. 176, 181 (2000).  Where the validity of the underlying tax liability is not properly at issue, however, the Court will review the Commissioner's determination for an abuse of discretion.  Sego v. Commissioner, supra at 610; Goza v. Commissioner, supra at 181.

Because the underlying income tax liability was self-assessed, petitioners did not receive a notice of deficiency. The parties agree petitioners have not had an opportunity to dispute their liability for the addition to tax under section 6651(a)(2). Therefore, we review de novo whether petitioners are liable for the addition to tax under section 6651(a)(2). See Downing v. Commissioner, 118 T.C. 22, 29 (2002); Ramirez v. Commissioner, T.C. Memo. 2005-179; Godwin v. Commissioner, T.C. Memo. 2003-289, affd. 132 Fed. Appx. 785 (11th Cir. 2005). However, we review for an abuse of discretion respondent's determinations rejecting an abatement of interest and sustaining the Federal tax lien. See Downing v. Commissioner, supra at 29; Ramirez v. Commissioner, supra; Godwin v. Commissioner, supra; see also sec. 6404(h)(1).

A. Addition to Tax Under Section 6651(a)(2)

Section 6651(a)(2) imposes an addition to tax for failure to pay the amount shown as a tax on a return by the date prescribed (determined with regard to any extension of time for payment). Section 7491(c) requires respondent to carry the burden of production with respect to the addition to tax for failure to pay. Higbee v. Commissioner, 116 T.C. 438, 446-447 (2001). To meet his burden of production, respondent must come forward with sufficient evidence indicating that it is appropriate to impose the addition to tax. Id. Once respondent meets this burden,

petitioners must come forward with evidence sufficient to persuade the Court that they are not liable for the addition to tax.

The parties stipulated that petitioners did not pay their tax liability for 1999 when it was due. Respondent's Form 4340, Certificate of Assessments, Payments, and Other Specified Matters, indicates that, at the time of trial, petitioners still had an outstanding tax liability for 1999. Further, petitioner testified that petitioners have not paid their outstanding tax liability for 1999. We find that, on these facts, respondent has met his burden of production under section 7491(c).

Petitioners may avoid the addition to tax if they can establish that their failure to timely pay was due to reasonable cause and not due to willful neglect. Sec. 6651(a). A showing of reasonable cause requires a taxpayer to demonstrate that he exercised ordinary business care and prudence but nevertheless was unable to pay the tax within the prescribed time. Sec. 301.6651-1(c)(1), Proced. & Admin. Regs. The taxpayer will be considered to have exercised ordinary business care and prudence if he made reasonable efforts to conserve sufficient assets in marketable form to satisfy his tax liability and nevertheless was unable to pay all or a portion of the tax when it became due. Id.

Petitioner knew that he would owe tax as a result of the distribution of profits from Mercer, but petitioners failed to make estimated tax payments and paid only $500 when they filed their return. Nevertheless, petitioners argue they had reasonable cause for their failure to timely pay their full tax liability because they made reasonable efforts to conserve sufficient assets in marketable form to satisfy their tax liability but were nevertheless unable to pay the tax when it became due. Petitioners assert they invested the profits received from Mercer with Merrill Lynch "into stocks like Intel and high tech stocks and things that were safe". However, petitioners assert that "Merrill Lynch lost it", leaving petitioners unable to satisfy their tax obligations. Petitioner testified that he believed he was making a conservative investment and he "thought it was the same thing as a bank."

While petitioners provided Ms. Russo with bank statements to support their contention that they were unable to pay their outstanding tax liability, they did not provide Ms. Russo with information regarding their investment with Merrill Lynch. Other than petitioner's testimony, there is no evidence in the record concerning petitioners' investment with Merrill Lynch, or that such an investment was even made. Other than stating they invested in "stocks like Intel and high tech stocks", petitioners have not specifically identified what stocks they invested in.

Petitioners provided the Court with no information indicating when their investment became worthless. In fact, petitioners did not claim a capital loss on their 2000 Federal income tax return, indicating that their investment did not become worthless in 2000. Without this information, we cannot determine whether petitioners had the ability to pay their tax liability when it was due.

There is no evidence in the record regarding whether petitioners exercised ordinary business care and prudence in monitoring their investment. Additionally, given that petitioner was a self-employed real estate developer and contractor, we do not find credible his testimony that he thought investing with Merrill Lynch was the same thing as depositing the money with a bank.

Petitioners have not established that they made a "reasonable efforts to conserve sufficient assets in marketable form". See sec. 301.6651-1(c)(1), Proced. & Admin. Regs. Petitioners have failed to show that their failure to timely pay the amount of tax shown on their return was due to reasonable cause and not due to willful neglect. Therefore, we hold that petitioners are liable for an addition to tax under section 6651(a)(2) as respondent determined.

B.  Abatement of Interest Under Section 6404(e)

Section 6404(e)(1) provides that the Secretary may abate the assessment of interest that accrued as the result of any unreasonable error or delay by an officer or employee of the Internal Revenue Service in performing a ministerial or managerial act.  However, section 6404(e)(1) also provides that "an error or delay shall be taken into account only if no significant aspect of such error or delay can be attributed to the taxpayer involved, and after the Internal Revenue Service has contacted the taxpayer in writing with respect to such deficiency or payment."

The Court may order abatement if the Secretary abuses his discretion by failing to abate interest.  Sec. 6404(h)(1).  In order to prevail, a taxpayer must prove the Commissioner exercised his discretion arbitrarily, capriciously, or without sound basis in fact or law.  Woodral v. Commissioner, 112 T.C. 19, 23 (1999); Nelson v. Commissioner, T.C. Memo. 2004-34.

Petitioners argue that respondent abused his discretion by failing to abate interest that accrued "due to the Respondent's unnecessary delay in resolving the present matter".  Petitioners assert respondent delayed in returning to them the offer-in-compromise forms submitted on November 27, 2002, and failed to meet with petitioners despite several requests to do so.

Petitioners have not shown that respondent caused any unreasonable error or delay in the evaluation of their offer-in-compromise forms submitted on November 27, 2002. Moreover, any delays in processing the offer-in-compromise were attributable in significant part to petitioners' failure to provide the revenue officer with requested information or clarification of other information.

Petitioners' assertion that respondent failed to meet with them to resolve this case despite several attempts by petitioners to do so is without support. Petitioners provided no specific information regarding who they tried to contact or when. Additionally, Ms. Russo's casenotes indicate that she promptly responded to all telephone calls and correspondence.

Petitioners have failed to establish that respondent caused any unreasonable errors or delays in the performance of a ministerial or managerial act. Therefore, petitioners have failed to show that respondent abused his discretion by rejecting their request for an abatement of interest. We hold that respondent did not abuse his discretion by rejection petitioners' request for an abatement of interest.

C.  <u>Appropriateness of the Federal Tax Lien</u>

During their section 6330 hearing, petitioners requested that respondent release the Federal tax lien. However, petitioners did not allege in their petition that respondent

erred by determining that the Federal tax lien should not be withdrawn. At trial, petitioner testified that the Federal tax lien was affecting his business and petitioners would be able to pay their taxes if the lien was removed. On brief, petitioners requested that the Court find as a fact that "The Petitioner believes that if the Federal Tax Lien was taken off, he would be able to earn money to pay his 1999 tax liability." However, petitioners did not argue on brief that respondent abused his discretion by determining that the Federal tax lien should not be withdrawn.

Rule 331(b)(4) provides that, in a lien or levy action, the petition must include "Clear and concise assignments of each and every error which the petitioner alleges to have been committed in the notice of determination. Any issue not raised in the assignments of error shall be deemed to be conceded." Because petitioners did not allege in their petition that respondent abused his discretion by determining that the Federal tax lien should not be withdrawn and because petitioners did not address it on brief, we find that petitioners have conceded the issue. Therefore, we hold that respondent did not abuse his discretion by determining that a Federal tax lien was appropriately filed and would remain in effect until petitioners' tax liability was satisfied.

In reaching our holdings, we have considered all arguments made, and, to the extent not mentioned, we conclude that they are moot, irrelevant, or without merit.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.